Johnson, J.
From the finding of facts, it appears that the defendant in May, 1909, verbally authorized the real estate agents to sell the land referred to, for the price and on the conditions named, and also authorized them to enter into a written contract with the purchaser when found.
The’ finding shows that, in the employment of the agents by the defendant, nothing was said as to the kind of deed to be made; nothing as to an abstract of title, nor as to the crops, rents, time when possession was to be given, payment of taxes, nor about any personal property whatever.
Notwithstanding this, all of these matters were covered by the contract which the agents made, and plaintiff in error contends that, as he did not authorize the making of such a contract, he was warranted in refusing to carry it out, and that the circuit court erred in finding that the plaintiffs below, were “entitled to have the agreement performed as to the real estate.”
The contract which the defendant repudiated was the one embodied in the written instrument *199 signed by the agents, the one on which suit was brought and the one which, as shown by the finding, plaintiffs demanded full performance of by the defendant, on the trial in both of the courts below.
. It is the settled law of this state that a real estate agent is without authority to execute a contract of sale which shall be binding on one who places real estate in his hands for sale, unless such authority is specially conferred. Weatherhead v. Ettinger, 78 Ohio St., 104.
The business of a real estate agent is to find prospective purchasers for property, whose owners desire to sell, and if employed he has earned his commission when he has found a person willing and able to pay the price stipulated, or has brought, parties together who afterwards agree. The fact that the owner of real estate employs an agent to find a purchaser for it, does not raise an implication that the agent is authorized to make a written contract with reference to it. And while the weight of authority seems to sustain the proposition that special authority to an agent to enter into a written contract may be verbally conferred, the proof must be clear and decisive, not only of such parol agreement, but that the agent had authority to make all of the terms for his principal which he includes in the written contract. If the agent assumes to make a contract in excess of this authority, the agreement is void and unenforceable. Where special power is conferred upon an agent, persons dealing with him are bound to ascertain the extent of his power. Pomeroy Spec. Perf., Sec. 77; Morris v. Ruddy, 20 N. J. Eq., 238; *200 Merritt v. Wassenich, 49 Fed. Rep., 785; Campbell v. Hough, 73 N. J. Eq., 601; Payne v. Potter, 9 Iowa, 549; 31 Cyc., 1350; Ward v. Thrustin, 40 Ohio St., 347.
It would seem that the justice and salutary force of these rules would be obvious. The owner of land is not bound to perform any contract for its sale unless it is in writing. A prospective purchaser is presumed to know that such is the law. When he deals with the person who claims to have verbal authority to sign such a contract as the agent of the owner, he does so with the knowledge that the principal will not be bound unless he had specially authorized the agent to make the contract which he assumes to make. The statute of frauds itself is but the expression of a wholesome desire to avoid some results of the infirmities of human nature.
Our attention is called to some cases in which the rule is announced that when a power is conferred upon an agent he has by implication such incidental authority as is necessary to carry his power into effect and defendants in error contend that inasmuch as the only direction which Spengler gave to the agents in this case was that the price should not be less than $130.00 an acre, all other matters necessary to be determined in the making and execution of the contract were left open without any specific instructions or limitations.
There is no doubt as to the correctness of the rule stated, but the incidental authority which the agent has by implication is only such as is necessary to carry into effect the power actually con *201 ferred on him. It cannot be said that where an agent was employed to sell a piece of land for $130.00 an acre, he had incidental authority to convey other valuable property and rights, in addition to the land, for the same price, and yet that is what the written contract made by the agents in this case provided for. The tile, the fencing material, the lumber and the logs, all were personal property belonging to Mr. Spengler, separate and apart from the realty. The contract also provided that the purchaser should have the landlord’s share of the rents for the year 1910, and, at the same time, provided- that the making of the deed should be postponed till June 1, 1910, at which time the cash payments should be completed.
The contract was made February 26th, the taxes became a lien in April, the deed and complete cash payment were postponed until June. By the arrangement stated, the purchaser would secure the rent for the year 1910 and Spengler would be compelled to pay a j^ear’s taxes which became a lien more than a month after the making of the contract. Moreover, under that provision of the contract, Spengler, in addition to giving up the rent and assuming taxes which became a lien after he made the contract, would lose the interest for the time between February 26th and June 1st on $7,800.00 of the purchase price.
None of these things was included in the authority given to the agents, and none of these things can, under any just rule, be held to be necessarily incidental to the power given by the *202 verbal agreement. The effect of such provisions was to reduce the price to be paid for the land itself, below the sum for which the owner had authorized it to be sold.
The written contract made by the agents also provided that the vendor should furnish to the purchaser an abstract of title to the premises and should convey them by warranty deed.
• Authority to contract for an abstract of title would not be implied, because the vendor is under no obligation, in the absence of express provisions, to furnish the vendee with an abstract of title. Thomas v. Guaranty Title & Trust Co., 81 Ohio St., 432. The same remark may be made as to the provision for a warranty deed.
The learned circuit court seems to have been of the opinion that the written contract, in so far as it provided for the conveyance of the personal property and rights referred to, was not binding-on the defendant Spengler, but they found that “as to said real estate plaintiffs were entitled to have said agreement enforced.”
The contract was entire. The price named was one entire sum for all of the property contracted for, not apportioned in any manner. The decree entered by the circuit court in effect subjected the vendor to the payment of the taxes referred to, as well as the loss of the interest on the sum above stated. All of this was as much unauthorized as the provisions for the conveyance of the personal property and the making of the abstract. The whole arrangement lacked the essential element of mutuality.
*203 Courts will compel parties to perform contracts in accordance with their terms, but they have no power to and will not make contracts for persons and compel the execution of them. Where the contract is entire and the consideration indivisible, if any material part of it is unauthorized, none can be enforced. Specific performance of contracts is a matter resting in the sound discretion of the court, not arbitrary, but controlled by principles of' equity, on full consideration of the circumstances of each particular case.
In City of Wellston v. Morgan, 59 Ohio St., 147, the statute under which the contract was made provided that it could be made for any period not exceeding ten years. A contract was made by the city for ninety-nine years. Its validity being attacked, it was contended that it was good for the ten years authorized by law, but the court held that the contract was entire and unseverable. It was held that the court could not make a different contract for the parties than the one they had made, by enforcing it for part of the time.
Spear, C. J.,
in the opinion, declares: “We are dealing with the subject of contract. It implies parties and a meeting of the minds. The paper presented undertakes to stipulate for the furnish-ing of light and an agreed price therefor, for a period of ninety-nine years. The proposition is that we now treat it as a contract for ten years; that is, that the court shall make a new contract for the parties for ten years, and then enforce it.' How can we say that the company would have incurred the great expense and outlay of money *204 and labor, which the petition declares was incurred, for the period of ten years only? And if the court were of the opinion that probably, the company would have been willing to so contract, where is there any authority in the court to now alter the terms that they did agree upon and then enforce them as changed? We are of the opinion that neither in law nor reason is there any ground for such a proposition.”
In Morris v. Ruddy, 20 N. J. Eq., 236, it is held that a broker employed to sell lands has no implied authority to sign a contract of sale on behalf of his principal, but that, if he had authority and the contract varies from his instructions, the principal will not be bound by it.
It was contended that the contract made by the agent varied from his authority in that by the contract the owner who employed the broker was left to pay the commissions, while the authority was to sell for $3,000 net, free of charge for commissions. The owner testified that these were the instructions, and the broker, who was the only other witness, admitted -that he was so instructed by the defendant. The court says: “He says that the complainant, by a verbal agreement, was to pay the commission and the complainant offers to pay them. But the written bargain is for $3,000, not for that and commissions. If the defendant is bound by the bargain as written, he can no more claim commissions than he could claim $3,030 on a parol understanding. If authority should be given in writing to contract to sell -lands for $1,000, retaining the right to occupy for three months, a written contract to sell for $1,000 would *205 not be valid, although there was a verbal understanding which the purchaser will comply with, permitting the occupation. The defendant is bound by this written contract to a different bargain from the one he authorized.” The court refused to enter a decree.
In Campbell v. Hough, 73 N. J. Eq., 601, there was a sale made by an agent who claimed to have been verbally authorized to sign a written agreement for the owner. The court, in the opinion, points out that the agreement as claimed by the agent, did not give him authority to bind the owner to pay the taxes due after sale, and say: “The authority, however, must be such as to permit the making of the identical contract sued on and not a contract different from the one actually authorized.”
The case we have in hand differs from those in which equity will enforce ■ specific performance as to part of the property contracted for, when it appears that the vendor does not own all of the interests he has agreed to sell, and is, therefore, unable to convey them in full in accordance with his contract.
In such case, the vendor is estopped from asserting his inability to perform, and the purchaser is permitted to insist that the vendor shall perform pro tanto. Here the purchaser was bound to know the extent of the agent’s authority. The contract made by the agent exceeded that authority, and the principal repudiated it as soon as he learned that it had been made. The case contains none of the elements which must be present before the application of the doctrine of estoppel can be *206 insisted upon. There was no conduct or representation by the owner upon which the purchaser relied. Nothing whatever was done by the purchaser which was induced by the silence of the owner with knowledge of the facts. / On the contrary, the purchaser being charged with knowledge of the extent of the agent’s authority is presumed to have known that many items which were included in the contract were not authorized, and that, therefore, the contract itself, in its entirety, was subject to the approval of the owner when brought to his knowledge and that he would not be bound by it unless and until he had approved it. There is a clear distinction between an entire indivisible contract, which was only authorized in part, and a contract made by an owner or by his duly authorized agent, which he is only able to perform in part. The vendee may waive performance of the part which the vendor is unable to perform and insist on the rest, but as to a contract which was unauthorized, a decree of specific performance, in whole or in part, would be to enforce a contract which the owner never made.
For these reasons, the judgment of the court below will be reversed and judgment entered for plaintiff in error.

Judgment reversed. .

Shauck, C. J., Donai-iue, Wanamaker, Newman and Wilkin, JJ., concur.