(82 South, 32)

WYNN v. HOFFMAN et al.   (6 Div. 822.)

(Supreme Court of Alabama.   May 15, 1919.)

1. ABATEMENT AND REVIVAL ⬅72(2)—PARTIES ⬅95(2)—REVIVOR IN FAVOR OF MINOR HEIR — NEXT FRIEND — AMENDMENT—NOMINAL PARTY.

On death of complainant, it was proper, as to a minor heir at law, to revive the cause in the name of the administrator ad litem and all of the heirs at law, the minor suing by next friend, and on her plea, after attaining majority, the nominal party, the next friend, is properly stricken out.

2. PRINCIPAL AND AGENT ⬅119(2)—AUTHORITY OF AGENT AS DEFENSE — BURDEN OF PROOF.

In suit by vendor of land through an agent to cancel her deed on the ground that its delivery by the agent without taking a mortgage back, according to the recital of consideration in the deed, was a fraud on her, the burden was cast on defendants as to the authority of the agent to change the recited terms to a cash payment of the full consideration.

3. DEEDS ⬅18—CONSIDERATION—FAILURE TO PAY.

If defendants, as a partnership in the purchase of plaintiff's land, through the wrong of one or both of them, never paid any part of the purchase money to plaintiff, the seller, her deed to them should be canceled, and the land recovered by her in her suit.

4. PRINCIPAL AND AGENT ⬅150(2)—ACT IN EXCESS OF AUTHORITY—BINDING FORCE ON PRINCIPAL.

If authority is given only to do a specific act, the limit of which is known to the person with whom the agent contracts, and the authority nevertheless is exceeded or materially varied, the principal is bound only to the extent of the specific authority given and exercised by his agent.

5. PRINCIPAL AND AGENT ⬅103(10), 105(4)—EXTENT OF AUTHORITY—PRESUMPTION.

The fact that the owner of land agreed to sell for $1,080, payable one-third cash, the balance in one and two years, with 6 per cent. interest, without other evidence, raised no presumption she acceded to a sale by her agent at the same price for cash, and authorized payment of the full amount of the price to the agent.

6. PRINCIPAL AND AGENT ⬅148(4)—KNOWLEDGE OF SCOPE OF AUTHORITY.

If an agent to sell land had authority only to collect one-third of the price and to secure balance by vendor's lien or mortgage, which the buyers knew, but the buyers paid the agent the full price, they are bound by the agent's limited authority, and are responsible to the owner for the balance of the price.

7. BROKERS ⬅96—FAILURE OF BUYERS TO PAY—LACK OF CONSIDERATION.

If the broker was the agent of the buyers of land, and collected the full price from them, and failed to pay it to the seller, as between the seller and buyers the transaction will be treated as if the buyers had not paid any part of the price, and decree of cancellation of the seller's deed to them will result.

8. PRINCIPAL AND AGENT ⬅131—LIABILITY OF AGENT—EXEMPTION OF PRINCIPAL.

The fact that an agent may be liable does not exempt his principal from liability.

9. PRINCIPAL AND AGENT ⬅123(7, 10)—AUTHORITY TO COLLECT FULL PRICE—EVIDENCE.

Evidence *held* to show that the seller of land through an agent gave him no authority to collect the full amount of the price, or to change the terms on which the deed was to be delivered.

Appeal from Circuit Court, Jefferson County; Hugh A. Locke, Judge.

Suit by Martha C. Wynn against Walter Hoffman and others, which, on death of complainant, was revived in the name of her administrator ad litem and heirs at law. From decree dismissing the cause, complainants appeal. Reversed and remanded.

Harsh, Harsh & Harsh, of Birmingham, for appellants.

Z. T. Rudulph, of Birmingham, for appellee.

THOMAS, J.   The bill was for cancellation, or that a lien be declared on lands for the purchase thereof. The complainant, owner of a one-twentieth undivided interest in 72 acres of land (known as the McIntosh tract), desired to sell the same on terms, and to that end gave the Underwriters' Real Estate & Rental Company authority in writing, of date April 1, 1905, to sell the same at "$300 per acre, one-third cash, and the balance in two notes, secured by mortgage on said interest, and payable, with interest, at one and two years, respectively," and agreed therein to pay said company "5 per cent. of amount sold for, out of said cash payment, for securing said purchaser."

It is averred in the bill that, through her said agent, having sold said property to Walter Hoffman and M. R. McNeill for $1,080, one-third cash and the balance "in equal payments in one and two years, to be evidenced by two promissory notes, to be of even date with said deed, and to bear 6 per cent. interest from date," said agent delivered the deed to said Hoffman and McNeill without procuring a mortgage for the amount of the purchase money. It is charged that "the procurement of the delivery of said deed without a delivery to her of said notes or other evidence of said debt and of said purchase money, or one-third thereof, as provided for in said deed, was a fraud upon her," and that complainant never received said notes, or other evidence of said indebtedness, or other part of said purchase money, and is informed, and therefore charges, "that

her said agent never received said notes or other evidence of said indebtedness, or other part of said purchase money," or that, if said party acting as her agent as aforesaid did receive the proceeds of the sale, he had "no authority so to do, except as to one-third of said purchase price, and if said agent did receive any part of said purchase price, all or the major part thereof was immediately repaid * * * to or retained by said Hoffman and McNeill, one or both, without authority from" her "and in fraud of her rights." The bill further charges that one R. T. Humphrey and the American Trust & Savings Bank claimed some interest in the land as grantees of Hoffman and McNeill, etc., and all of aforementioned persons are made respondents to the bill.

Respondent Hoffman, answering, said the property was sold to him and M. R. McNeill for $1,080; that, as originally agreed, the terms were one-third cash and the balance in one and two years from date, deferred payments to bear 6 per cent. interest; that "complainant was represented in said transaction by one Joseph T. Wilson, who had full authority to make the sale"; that, when the deed was delivered to the purchasers, "they suggested to said Wilson that it would be more satisfactory for them to pay cash for the land, as they had the money in the bank, and they therefore requested him, as the agent of complainant, and he agreed, to have another deed executed by complainant, which should express a cash consideration of $1,080 and thereby eliminate the vendor's lien. The purchasers paid cash instead of executing notes, and the said Wilson, as agent of the complainant, agreed to this, and agreed that the purchase price should be paid in cash. Thereupon Walter Hoffman and M. R. McNeill paid the full purchase price of $1,080 by check on the American Trust & Savings Bank, payable to the said Wilson, and said Wilson delivered said deed to Hoffman and McNeill, and agreed to get another deed which should express the cash consideration aforesaid. No other deed was brought to Hoffman and McNeill by the said Wilson, or by any one else, on behalf of the complainant. They therefore held and had recorded the said deed, of which Exhibit A purports to be a copy. In the meantime the said check which they had given to Wilson, who then and there was acting as agent for the complainant, had been indorsed by the said agent, and the money was paid to him for the complainant. This defendant says that, while it is true that no notes were given by Hoffman and McNeill, and no mortgage was given, or any evidence of said debt, Hoffman and McNeill had paid for the land as above mentioned." Respondent further denies that procurement of the delivery of the "deed without delivery to complainant of notes or evidence of debt as provided for in said deed was a fraud upon her."

Respondent McNeill, in his answer, averring in substance the foregoing, said further that the payment of the purchase money for said land was made in cash "upon the urgent solicitation of complainant's agent, and there was no fraud on the part of defendant against complainant in said transaction, and, as above stated, said J. T. Wilson a long time thereafter assured defendant that the transaction was satisfactory to complainant, and took a conveyance acknowledging the full receipt of said purchase money, to be executed by said complainant, and thereafter assured defendant that complainant had executed said statement, acknowledging the receipt of said purchase money in full, but for various reasons said J. T. Wilson had failed or neglected to deliver said paper to defendant, and defendant charges that complainant's said agent, J. T. Wilson, received the full amount of the purchase money for complainant, and if he failed to pay same over to complainant, or to duly account for said purchase money in full to complainant, that this defendant should not be held liable for any breach of trust in complainant's said agent, where she had authorized said agent to make said transaction and to deliver the deed for said conveyance, and put it into the power of said agent to receive said purchase money, and that defendant should not be held chargeable for any misuse or failure of complainant's agent, J. T. Wilson, to pay such purchase money," and admitted the mortgage to R. T. Humphrey, averred to have been long since "foreclosed and property sold under said mortgage." The American Trust & Savings Bank, averred in the bill to be an interested party, disclaimed any interest in the lands, and there was a decree pro confesso against said Humphrey, the other respondent.

The bill was amended to make the Birmingham Iron & Development Company a party respondent, as having acquired title through mesne conveyances from respondents Hoffman and McNeill. The Development Company, in replying, adopted the answer of McNeill, saying further that "one J. T. Wilson, who is the only heir or distributee claiming any interest in the action, is estopped by his own personal action from maintaining any claim caused by his own wrong or intentional negligence and laches, as against this defendant."

[1] On the death of complainant, the cause was revived in the name of her administrator ad litem, J. T. Wilson, and all of her heirs at law, Mrs. Sarah F. Wilson, Mrs. Marie Jones, Mrs. Mattie Yancey, Mrs. Lillian McDonnell, and Helen Wynn (who, being a minor, sues by her next friend, Mrs. Sarah F. Wilson), were made parties complainant. This was a proper procedure as to Helen Wynn, the minor, and on a plea of her thereafter having attained majority, the nominal party—the next friend—would have been

stricken out. Smith v. Yearwood, 197 Ala. 680, 73 South. 384; Robinson Lumber Co. v. Sager, 75 South. 309;[1] Ala. Power Co. v. Hamilton, 77 South. 356, 360.[2] All of the real parties in interest were before the court, and will be concluded by the final decree when rendered. From the decree dismissing the cause, and taxing complainant with the costs, an appeal is taken.

Respondents were duly notified of the authority of Mrs. Wynn's agent as to the sale of lands, to the extent of the recited consideration in her deed, which is as follows:

"Know all men by these presents, that for and in consideration of the sum of one thousand and eighty dollars to me in hand paid by Walter Hoffman and M. R. McNeill, one-third of said sum in cash, and the balance in equal payments in one and two years, as evidenced by two promissory notes of even date herewith, bearing 6 per cent. per annum interest, I, Martha C. Wynn, have this day bargained, sold, and conveyed, and by these presents do grant, bargain, sell, and convey, unto said Walter Hoffman and M. R. McNeill the following described real estate, situated in Jefferson county: An undivided one-twentieth interest. * * * "

The admission of their respective answers were to like effect, evidenced by Hoffman's answer to the second paragraph of the bill that, at the time the purchasers agreed to buy the property, it was understood that it was sold for one-third cash and the balance in one and two years from date, etc., and that by McNeill to the effect that, respondents desiring to pay only part cash, a sale was finally agreed on between respondents and J. T. Wilson (representing complainant), and that a few days thereafter complainant's agent presented to respondents a conveyance a copy of which is attached to the original bill. It is true that in McNeill's answer he avers that Wilson urged and requested respondents to pay all cash, instead of part cash only, and assured them of his authority, as complainant's agent, to make the transaction a cash one, instead of only part cash, "being presented with a written statement by the complainant that the said J. T. Wilson was complainant's authorized agent," etc. On such representation of authority, respondents gave a check to Wilson for the full purchase price and received the conveyance shown, from which we have quoted the "recited consideration."

[2] Of the authority of the agent, Wilson, to change the terms evidenced by the recited consideration contained in Mrs. Wynn's deed to Hoffman and McNeill to that of a cash payment of the full consideration of $1,080, the burden is cast on respondents. Have they discharged this burden as to the averred all-cash payment in lieu of the two-thirds deferred payment plan, and the authority for the payment of the consideration to Wilson? The effect of the decree of the chancellor was that such authority in Wilson was proven.

[3-5] If respondents, as a partnership in the purchase of the land, through the wrong of one or both of them, never paid any part of the purchase money to the vendor, the deed should be canceled and the land recovered by complainant (Borst v. Simpson, 90 Ala. 373, 7 South. 814; Seabury v. Doe ex dem. Stewart, 22 Ala. 207, 58 Am. Dec. 254; Nelson v. Sanders, 123 Ala. 615, 26 South. 518); or if default was made by payment of a part of the purchase price, the balance due thereon should be enforced by appropriate decree. It is a general rule of agency that, authority is only given to do a specific act, the limit of which is known to the person with whom the agent contracts, and, notwithstanding this limited authority and its knowledge, the authority is exceeded or materially varied, the principal is bound only to the extent of the specific authority given and exercised by his agent. Rhode v. Gallat, 70 Fla. 536, 70 South. 471, and authorities; Sumrall v. Kitselman, 101 Miss. 783, 58 South. 594; Johnson v. Ala., etc., Co., 90 Ala. 505, 8 South. 101; Cummins v. Beaumont, 68 Ala. 204; Burks v. Hubbard, 69 Ala. 379. The fact that Mrs. Wynn agreed to sell her land for $1,080, payable one-third cash, the balance in one and two years, with 6 per cent. interest, without other evidence, raised no presumption of the fact that she was willing and acceded to a sale of her land at the same price for cash, and authorized the payment of the full amount of the purchase price to the agent who conducted the negotiations in question.

[6-8] If Wilson had the authority to collect only one-third of the purchase price of the land and to secure the balance by vendor's lien or mortgage on the land, this fact being known to the purchasers, and if, notwithstanding this lack of authority on the part of the agent, Wilson, and with knowledge thereof, the grantees in the conveyance paid him the full amount of the purchase money, they are bound by the authority of the agent to receive only one-third of the consideration and the purchasers are responsible; and the land in the hands of their assignees is subject to complainant's lien for two-thirds of the purchase price, with interest thereon at 6 per cent., the contract rate, from the date of the deed to the expiration of the respective deferred payments (one and two years), and thereafter, for interest at the rate of 8 per cent. per annum to the rendition of final decree. This result follows, notwithstanding the evidence may show that Wilson was agent for complainant in consummating the sale. On the other hand, if Wilson was the agent of the respondents in the purchase of the land, had collected the full amount of the purchase price thereof, and failed to pay the same to Mrs. Wynn, as between the parties, the transaction would be treated as if respondents had not paid any part of the purchase money, and a decree of cancellation

[1] 199 Ala. 675.      [2] 201 Ala. 62.

of the deed would result. Where, however, third persons are interested by mesne conveyances from respondents, the most they could ask, under the evidence showing payment of only one-third of the purchase price, is a money decree for the balance of the purchase price of the lands, with interest thereon (according to the original agreement of sale) to the expiration of the one and two year periods recited therein, and legal interest per annum on such sums to the date of final decree. The fact that the agent may be liable does not exempt the principal from liability. Land Mortgage Inv. Agcy. v. Preston, 119 Ala. 290, 297, 24 South. 707; Kendrick v. Colyar, 143 Ala. 597, 601, 42 South. 110; Cook v. Cook, 28 Ala. 660, 669.

[9] We have carefully examined the testimony, and are convinced that Mrs. Martha C. Wynn gave no authority to Wilson to collect the full amount of the purchase price or to change the terms on which the deed was to be delivered. This fact is clearly shown by the exhibits attached to and made a part of the testimony of M. R. McNeill. The exhibit check was as follows:

"Birmingham, Ala., December 7, 190—. No. 3869. American Trust and Savings Bank: Pay to the order of J. T. Wilson, Agent, $992.-76, nine hundred ninety-two and $^{76}/_{100}$ dollars. Wynn Land. Hoffman & Wynn."

On the end of the check is written the following:

"Hoffman & McNeill, Largest Dealers in the South in Scrap Iron, Metals, and Bones."

On the back of the check is written:

"J. T. Wilson, Agent. Walter Hoffman."

J. M. Bonner, bookkeeper for Hoffman & McNeill (respondents' firm name), testified that the check was paid "December 9, 1905, two days after it was dated." The written instruction to Hoffman & McNeill to pay Wilson was only on the following conditions:

"Messrs. Hoffman & McNeill, Birmingham, Ala.: You are hereby authorized to pay over to Mr. J. T. Wilson money and notes proceeding [evidently *proceeds*] from the sale by me to you of my one-twentieth interest in the 72 acres of land known as the 'McIntosh tract,' and accurately described in the deed which I herewith return to him to be deliveerd to you upon your compliance with its terms. Martha C. Wynn."

The effect of such record evidence is not overturned by the subsequent effort of McNeill—or, as for that, Wilson—to secure a quitclaim deed without the condition of the recited deferred payments evidenced by the receipt of Wilson contained in the record, or by respondents' testimony to this effect.

It is beyond controversy that the check was last indorsed by Walter Hoffman, one of respondents, a partner of McNeill, and one of the drawers of the check, which was signed "Hoffman & Wynn." Thus is corroborated the testimony of Wilson and of Odom that the check, after indorsement by Wilson, agent, was left with Hoffman & McNeill to await authority from Mrs. Wynn for delivery of the deed on the materially changed terms of sale. The written authority from Mrs. Wynn to Hoffman & McNeill was only to the effect that they "were authorized to pay over to Mr. J. T. Wilson money and notes," the proceeds of the sale by her of her one-twentieth interest in the land, according to the well-understood written contract terms of sale, and was a receipt for only one-third of the purchase money in cash and for notes for deferred payments of two-thirds of such purchase price. This authority was also recited in the contract of agency for the sale authorized by Mrs. Wynn to be made only through the realty company (by whom J. T. Wilson was employed), and was carried into the conveyance itself by the grant to Hoffman & McNeill, grantees.

The equity of complainant was shown by the record title. Veitch v. Woodward Iron Co., 76 South. 124;[3] City of Birmingham v. Graham, 79 South. 574;[4] Code 1907, § 3373. The justice as well as the law of the case dictates an enforcement of the vendor's lien on the land for two-thirds of the purchase price, with interest at the rate and for the time as per contract agreement, and thereafter at the lawful rate per annum to date of final decree, less the reasonable charges such as commissions, abstract fees, etc., to which the same may be shown to be subject under the contract of sale.

The decree of the circuit, in equity, is reversed; the cause is remanded for ascertainment of the amount of the balance of the purchase money due and unpaid.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.

[3] 200 Ala. 358.    [4] 202 Ala. 202.